**2013 BNH 008   Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.**
_____

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

In re:                                                                                                  Bk. No. 12-11392-JMD
                                                                                                        Chapter 13
Jared I. Stevens,
            Debtor


*Robert M. Moore*
*Moore Devlin Law, PLLC*
*530 Chestnut Street; Suite 2D*
*Manchester, NH*
*Attorney for Debtor*

*Carl E. D'Angio, Jr.*
*D'Angio Law Office*
*11 Spring Street*
*Waltham, MA*
*Attorney for Creditor Peter Gazzara*


## MEMORANDUM OPINION

### I.  INTRODUCTION

The Court has before it creditor Peter Gazzara's ("Gazzara") Motion to Dismiss (Doc. No. 17) (the "Motion") Jared I. Stevens's (the "Debtor") chapter 13 case, and the Debtor's objection thereto (Doc. No. 31) (the "Objection").  The Motion alleges that the Debtor filed his chapter 13 petition in bad faith by purposefully understating the value of certain assets.

The Court held a preliminary hearing on the matter on August 8, 2012.  At the request of the parties, the Court initially scheduled an evidentiary hearing on the matter for November 15, 2012.  After some delay by the parties, the Court held an evidentiary hearing on the matter on

March 28, 2013 (the "Hearing").  The Court took evidence at the Hearing for the purpose of deciding whether Gazzara could show that the Debtor filed his chapter 13 case in bad faith under 11 U.S.C. (the "Bankruptcy Code") § 1307(c)[1].  However, the Court ruled that any evidence admitted at the Hearing could be used at any later hearing on confirmation of the Debtor's plan (e.g., if Gazzara pursues his objection to the Debtor's plan under § 1325(a)(3) of the Bankruptcy Code).  Following the Hearing, Gazzara submitted a Request for Findings of Fact and Rulings of Law (Doc. No. 72) (the "Request for Findings").  Essentially, Gazzara alleges two bases to support a finding of bad faith under § 1307(c) of the Bankruptcy Code: (1) that the Debtor purposefully understated the value of certain assets,[2] and (2) that the Debtor failed to make an honest or diligent effort to list all of his debts on his schedules.

This Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334, 157(a), and U.S. District Court for the District of New Hampshire Local Rule 77.4(a).  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.  FACTS

### A.    Background

The following background information is based on the stipulated facts in the parties' Joint Pre-Trial Statement (Doc. No. 60).

Gazzara operated a pizza restaurant named "Capri Pizza" in Hudson, New Hampshire for

---

[1] Gazzara also filed an objection (Doc. No. 16) to the Debtor's chapter 13 plan (Doc. No. 2), but the Court will hear that objection at the time of any hearing on confirmation of the Debtor's plan, if necessary.

[2] Gazzara alleged that the Debtor's valuation of his business was influenced by the amount of exemptions available to the Debtor.

approximately 23 years.  In late 2010 or early 2011, he engaged Jon Coto ("Coto"), a business broker, to help him sell the business.  On May 2, 2011, Gazzara sold the business to the Debtor for $129,000 (the "2011 Sale").  The 2011 Sale was partially seller-financed, with the Debtor making a cash payment of $30,000 and issuing two promissory notes to Gazzara for a total of $99,000.  The parties apparently intended that the promissory notes would be secured by the business, but it appears Gazzara never perfected a valid security interest either in the assets of Capri Pizza or in its ownership LLC interests.

On April 26, 2012 (the "Petition Date"), the Debtor filed the present chapter 13 case. The Debtor listed "Capri Pizza of Hudson LLC" on his Schedule B with a value of $22,000.  The Debtor attributed the value to: "Inventory: $2,000.00; Equipment: $17,000.00; Checking Account: $3,000.00."

### B.   Factual Findings

At the Hearing, the parties stipulated to the admission of Gazzara's Exhibits 1 through 20 and Debtor's Exhibits A through G.  The Court heard testimony from: (1) Coto (the business broker who arranged the sale of Gazzara's business to the Debtor); (2) the Debtor; (3) Arthur Drewes ("Drewes") (the Debtor's witness on the issue of the value of the business assets); and (4) Gazzara.  At the conclusion of the Hearing, the Court took judicial notice of the Debtor's schedules and the Court's Claims Register in this case.

#### 1.   The Value of Capri Pizza

At the 2011 Sale, the Debtor paid $129,000 for Capri Pizza.  Coto testified -- and provided an affidavit (Plaintiff's Ex. 20) stating -- that he generally values a pizza restaurant at

3

twenty times the average weekly gross sales, with various adjustments.  Plaintiff's Exhibit 9 indicates that the purchase price was allocated as follows: (A) $63,250 for equipment and fixtures; (B) $63,250 for goodwill; and (C) $2,500 for inventory at cost.  Coto testified that he usually uses a fifty-fifty allocation between equipment and goodwill as a starting point for purchase price allocations.

The parties presented virtually no direct evidence of the value of the business on the Petition Date.  The value on the Petition Date is the most relevant value for a dispute over whether the Debtor purposefully understated the value of the business on his bankruptcy schedules.  Coto gave no testimony on what the value of the business was on the Petition Date, or how the business had performed in the months leading up to the Petition Date.  Coto's testimony indicated that he had done no fact-finding on the value of the business since the 2011 Sale.  Drewes provided undisputed testimony, along with an appraisal (Pl. Ex. 18, Def. Ex. F), that the "turnkey" value of Capri Pizza's *equipment* was $12,000 to $15,000.  The appraisal is dated July 16, 2012.

On his schedules, the Debtor valued the business at $22,000, attributing that value to: (A) $2,000 for inventory; (B) $17,000 for equipment; and (C) $3,000 for a checking account. The Debtor ascribed no value to the business's goodwill because, according to the Debtor, the business was barely covering its expenses.  The Debtor testified that he believed the business had no goodwill.  The Debtor's testimony indicated that he did not fully understand the concept of business goodwill.  To arrive at his value, the Debtor testified that he looked at the value of the business's equipment, spoke to people he knew about the business's value (it is unclear whether these people had any expertise or experience in opining on business values), and took into

4

account bad reviews.

Regardless of any seemingly objective valuation of the business, the Debtor's testimony indicated that he thought the business was worth much less than the price he paid in the 2011 Sale.

On Schedule C, the Debtor exempted a total of $13,900 of the total value of Capri Pizza under § 522(d)(5) and (d)(6). The Debtor's testimony indicated that he did not have a strong grasp on the concept and limit of bankruptcy exemptions. The Debtor's testimony also indicated that he did not connect the value of the business to his exemption therein. The Debtor testified that he understood he would be able to keep his truck and his business in the bankruptcy, as long as he made the payments under his chapter 13 plan.

2. Debtor's Scheduled Debts Compared to Court's Claims Register

The Debtor listed no secured creditors on his Schedule D, filed along with his voluntary petition on the Petition Date. On his Schedule E, the Debtor listed a single creditor, Hunnee Mercier, with a priority claim for child support in the amount of $0.00[3]. On his Schedule F, the Debtor listed a single creditor, Gazzara, with a general unsecured claim in the amount of $87,000.00.

The Court's Claims Register in this case contains the following claims as of the Hearing:

| Claim No. | Creditor | Amount | Type of Claim |
| --- | --- | --- | --- |
| 1 | Peter Gazzara | $93,226.00 | Secured |
| 2 | American InfoSource LP as agent for InSolve Recovery, LLC (HSBC Bank) | $1,229.13 | Unsecured |

---

[3] The Debtor's Statement of Financial Affairs lists an $88 per week payment to Hunnee Mercier.

| 3 | American InfoSource LP as agent for InSolve Recovery, LLC (Capital One) | $685.97 | Unsecured |
|---|---|---|---|
| 4 | Aargon Agency As Agent For O P S 2 LLC | $254.93 | Unsecured |
| 5 | Aargon Agency As Agent For Valley Hospital | $4,164.00 | Unsecured |
| 6 | Kamco Supply Corp. of Boston | $17,941.97 | Unsecured |

The Debtor testified that he filed for bankruptcy because he could not pay his bills. However, the Debtor listed only one general unsecured creditor on his schedules. The Debtor clarified in his testimony that he had "ongoing" bills. The Debtor testified that he understood the Bankruptcy Code requires a debtor to list all of his debts and do "homework" to list them all, but it was unclear if the Debtor understood this on and before the Petition Date, or only as of the Hearing. The Debtor stated that claim number 6 was not his debt.

## III.  DISCUSSION

### A.  Dismissal For Bad Faith Under 11 U.S.C. § 1307(c)

"Section 1307(c) provides that on request by a party-in-interest, after notice and a hearing, the court may dismiss a case under Chapter 13 or convert the case to a Chapter 7 case, whichever is in the best interests of the creditors and the estate, for cause." Sullivan v. Solimini (In re Sullivan), 326 B.R. 204, 210-11 (1st Cir. B.A.P. 2005).

While "bad faith" is not an enumerated "cause" under § 1307(c)(1)-(11), "it is well established that lack of good faith (i.e., bad faith) is 'cause' for dismissal or conversion of a Chapter 13 case." Id. at 211 (internal citations omitted). Under § 1307(c), the objecting creditor has the burden of proving a lack of good faith on the part of the debtor. Id.

Bankruptcy courts in the First Circuit apply a totality of the circumstances test to determine whether a debtor has filed a chapter 13 in good faith (or bad faith).  Id.  Courts typically consider the following factors in making such a determination:

> (1) debtor's accuracy in stating her debts and expenses, (2) debtor's honesty in the bankruptcy process, including whether she has attempted to mislead the court and whether she has made any misrepresentations, (3) whether the Bankruptcy Code is being unfairly manipulated, (4) the type of debt sought to be discharged, (5) whether the debt would be dischargeable in a Chapter 7, and (6) debtor's motivation and sincerity in seeking Chapter 13 relief.  Id. at 212, citing In re Dicey, 312 B.R. 456, 549 (Bankr. D.N.H. 2004).

Although this Court and others have provided lists of relevant factors, the inquiry is inherently fact sensitive, done on a case-by-case basis, and may involve consideration of other factors or a more general balancing of equities.  See Sullivan, 326 B.R. at 212 (citations omitted).  As this Court has noted before, the requirement of good faith is ambiguous.  Dicey, 312 B.R. at 459.  Bad faith generally requires something "more than a mistake or inadvertence"; it requires "some form of deception."  In re Valentine, 2009 BNH 25 (Bankr. D.N.H. 2009) (citations omitted).  A debtor's "mere carelessness or oversight" would probably be insufficient on its own to show bad faith.  See Hannigan v. White (In re Hannigan), 409 F.3d 480, 483 (1st Cir. 2005).

However, courts have held that a debtor's "reckless disregard for the accuracy of information" contained in his schedules can rise to the level of bad faith.  Valentine, 2009 BNH 25; see also Robin Singh Educ. Servs. v. McCarthy (In re McCarthy), 488 B.R. 814, 826 (1st Cir. B.A.P. 2013) ("Even though courts will not construe an ignorant or inadvertent omission as evidence of fraudulent intent, reckless disregard may nonetheless be found based on the 'cumulative effect of a series of innocent mistakes.'") (citations omitted).  Moreover, debtors

7

seeking bankruptcy relief may not "play fast and loose with their assets or with the reality of their affairs." Marrama v. Citizens Bank (In re Marrama), 430 F.3d 474, 478 (1st Cir. 2005) (citations omitted). "A bankruptcy court is entitled to insist upon filings and representations made in utmost good faith." Hannigan, 409 F.3d at 483.

### 1. Undervaluation of Assets

A debtor's intentional undervaluation of an asset can support a finding of bad faith. See Hannigan, 409 F.3d at 484; In re Harris, 2006 BNH 48 (Bankr. D.N.H. 2006).

In Hannigan, the chapter 7 debtor listed his ownership interest in a single-family home and ascribed the property a value of $135,000. Hannigan, 409 B.R. at 481. The debtor exempted the property under Massachusetts law for the full $135,000 allowable amount. Id. At and after the 341 meeting, the chapter 7 trustee and the debtor's sole creditor inquired as to whether the debtor's value for the property included an adjoining parcel of vacant land. Id. at 482. Thereafter, the debtor was evasive in providing complete information about the property and the abutting parcel. Id. During the course of the case, the debtor attempted to amend his exemption of the property up to the full amount allowable under Massachusetts law, $300,000. Id. at 481. The First Circuit Court of Appeals upheld the bankruptcy court's denial of the amendment on the grounds of bad faith, and noted similar cases where a debtor's intentional undervaluation of property resulted in a finding of bad faith. Id. at 483-84, (citing Bauer v. Iannacone (In re Bauer), 298 B.R. 353 (8th Cir. B.A.P. 2003)).

In Harris, the chapter 7 debtor valued certain business assets at $8,600, but later testified that he used the assets to produce approximately $85,000 in revenue within the first nine months after his bankruptcy petition. Harris, 2006 BNH 48. The debtor in Harris argued that the assets

8

were mostly lumber and their added value came from his "know-how" in making finished products from the lumber[4]. Id. However, the bankruptcy court was unconvinced that the debtor's valuation of $8,600 was accurate. Id. The court found that the debtor acted in bad faith by undervaluing the assets, and noted that the debtor's actions went beyond carelessness or oversight. See id.

In the present case, the evidentiary record is insufficient to support a finding that the Debtor intentionally undervalued Capri Pizza on his schedules. There is no direct evidence to show that the business was worth more on the Petition Date than the value the Debtor assigned to it[5]. There is no evidence to support a finding that the Debtor had knowledge that the business had a higher value on the Petition Date, and then purposefully under-represented that value on his schedules. Similarly, there is no evidence to support a finding that the Debtor assigned a value to the business with a reckless disregard for the accuracy of the value.

The Debtor testified that the business was barely covering its expenses. Further, the

---

[4] The debtor in Harris also failed to turn over the assets when the chapter 7 trustee requested that he do so, and continued to use the assets even after the chapter 7 trustee ordered him to stop (which the debtor agreed to do).

[5] Applying a rough version of Gazzara's expert's method to the business's tax records reveals the following: The Debtor's Exhibit C, a State of New Hampshire Meals Tax Return worksheet, provided monthly tax receipt figures for the business for January through August of 2012. The average monthly receipts for that period were $14,034.38. Using that figure, the annualized receipts of the business would be roughly $168,412.50. Based on the annual receipts estimate, the weekly receipts would be roughly $3,238.70. Using Coto's rough valuation recommendation for a pizza restaurant of 20 times average weekly gross sales, a starting point for the value of Capri Pizza, at least according to Coto's methods, would be $64,774.04.

For comparison, Plaintiff's Exhibit 15 (Coto's "Business Review"), ostensibly based upon Gazzara's 2009 Meals Tax Returns for the business, indicated gross sales for 2009 of $284,488. Using the same analysis as above, a (very rough) estimate for the value of the business in 2009 would be $109,418.46.

Notwithstanding the above, there was no direct evidence to contradict the Debtor's valuation of the business on the Petition Date.

Debtor presented some evidence -- through Drewes -- to support the Debtor's rationale in valuing the business.

Essentially, Gazzara argues that the Debtor's $22,000 value for the business on the Petition Date is incredible in light of the $129,000 purchase price at the 2011 Sale, less than one year earlier. However, this argument does not rise to the level of evidence to show a value that exceeds the Debtor's value. Had Capri Pizza instead been gold bullion or lakefront property, a precipitous drop in value over a relatively brief period of time would be more problematic. But, the fate of a restaurant can turn quickly, along with its value. Hypothetically, due to mismanagement or market conditions, Capri Pizza could have gone out of business completely within a year of the 2011 Sale, making its value effectively $0.00.

Similarly, Gazzara's argument that the amount of available exemptions influenced the Debtor's valuation of the business is not evidence tending to prove that the Debtor purposefully undervalued the business.

Unlike the debtor in Hannigan, the Debtor here has done nothing during the course of the case to indicate that he knows the value of the Capri Pizza is actually higher than $22,000. See Hannigan, 409 B.R. at 481. Unlike the debtor in Harris, nothing in the record indicates that the Debtor's actions in valuing the business were part of a pattern of evasiveness or intentional understatement. See Harris, 2006 BNH 48.

Accordingly, Gazzara has not proven that the Debtor purposefully understated the value of Capri Pizza on his schedules in bad faith.

### 2. Failure to List All Creditors

A debtor's accuracy in stating his debts is a factor bankruptcy courts consider in determining whether the debtor filed his petition in bad faith. Sullivan, 326 B.R. at 212. If a debtor lists some creditors while omitting other "preferred creditors," that can be indicative of bad faith. See Boyce v. Barnhart (In re Barnhart), 2010 Bankr. LEXIS 74 at *24 (Bankr. M.D. Pa. Jan. 5, 2010); Dilg v. Greenburgh (In re Greenburgh), 151 B.R. 709, 716 (Bankr. E.D. Pa. 1993) ("[A] calculated omission of certain creditors could constitute bad faith.").

In Barnhart, the debtor entered into a partnership to breed and train racehorses. Barnhart, 2010 Bankr. LEXIS 74 at *2. The partnership disintegrated, and the debtor's partner sued him for breach of contract. Id. The lawsuit resulted in a jury verdict against the debtor for $74,000, plus interest and court costs. Id. The debtor filed an appeal and application for supersedeas. Id. The application was denied and the debtor filed a chapter 13 petition three days later. Id. Although the debtor listed several creditors, he omitted one creditor, a stable owner who boarded his horses, to whom he owed $6,000. Id. at 23. The debtor gave conflicting testimony about the omitted creditor. Id. at 23-24. Initially, the debtor testified that he knew he owed money to the creditor on the petition date, but did not list her on his schedules because he hoped "to catch up with her." Id. at 23. Later, the debtor testified that "he either had not received the bill for her services or had misplaced the bill at the time the petition was filed." Id. at 23-24. The bankruptcy court found the debtor's listing of some creditors while omitting "preferred creditors" to be indicative of bad faith[6]. Id. at 24.

---

[6] The debtor in Barnhart also made pre-petition transfers to his non-debtor spouse, was not forthcoming with information on the extent of his ownership in a closely held corporation, and did not amend his schedules, even when he knew information on his schedules was incorrect.

In re Gaudet, 75 B.R. 92 (Bankr. D.R.I. 1987), involved a slightly different context from the present case[7]. There, the debtor failed to schedule creditors with claims totaling over $70,000, although he was "fully aware of their existence." Id. at 93 n.3. Additionally, the debtor's plan showed $1,355 in monthly net income, but only proposed to pay $400 monthly. Id. The bankruptcy court found these facts supportive of a finding that the debtor did not file his petition in good faith. Id.

In the present case, the issues and evidence are narrower than in the preceding examples. It is troubling that the Debtor listed only Gazzara on his Schedule F, in spite of his testimony that he had ongoing bills. That said, based on the evidence presented at the hearing and available in the Court's claims register, the omitted obligations were relatively minor. Four out of the six claims filed in the case appear to be by collection agencies, indicating that the underlying debts are relatively old. The Debtor disputes one of the remaining two claims (claim no. 6). That leaves only Gazzara's claim, which the Debtor listed on his schedules as undisputed.

It is entirely possible that a struggling restaurant has no trade debt, because its suppliers insist on COD terms. However, utilities are always billed in arrears and it is almost certain that the Debtor's business had incurred such expenses. Additionally, it is likely that the Debtor's business had incurred, but not paid, payroll expenses to its employees. In spite of this, Gazzara did not establish a sufficient evidentiary record to show that the Debtor had knowledge of significant debts that he chose not to list on his schedules. Unlike in Barnhart, there is no evidence in this case that the Debtor strategically omitted certain favored creditors, or that the

---

[7] The debtor in Gaudet was a repeat-filer who used chapter 13 "as a temporary refuge whenever creditors drew too near for comfort." The bankruptcy court denied the debtor's motion to "withdraw" his petition and granted the trustee's motion to convert the case.

Debtor changed his story about the status of omitted creditors.  See Barnhart, 2010 Bankr. LEXIS 74 at *23-24.  Unlike in Gaudet, the Debtor here is not a serial-filer, and the evidence is insufficient to indicate that the Debtor was fully aware of the omitted creditors who have filed claims.  See Gaudet, 75 B.R. at 93 n.2.  And, in any event, Gazzara would still be the largest creditor in this case.

Accordingly, Gazzara did not present sufficient evidence to support a finding that the Debtor failed to make an honest or diligent effort to list all of his debts on his schedules

## IV.  CONCLUSION

For the foregoing reasons, Gazzara's Motion shall be denied by separate order.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

ENTERED at Manchester, New Hampshire.

Date:   September 17, 2013              /s/ J. Michael Deasy
                                        J. Michael Deasy
                                        Bankruptcy Judge

13