**2014 BNH 009    Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.**

---

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:

Jared I. Stevens,                                                   Bk. No. 12-11392-BAH
    Debtor                                                    Chapter 13


*Robert M. Moore*
*Moore Devlin Law, PLLC*
*530 Chestnut Street; Suite 2D*
*Manchester, NH*
*Attorney for Debtor*

*Carl E. D'Angio, Jr.*
*D'Angio Law Office*
*11 Spring Street*
*Waltham, MA*
*Attorney for Creditor Peter Gazzara*


## MEMORANDUM OPINION

## I.  INTRODUCTION

On April 26, 2012 (the "Petition Date"), Jared I. Stevens (the "Debtor") filed a chapter 13 bankruptcy petition, along with a chapter 13 plan (Doc. No. 2) (the "Plan").  On July 3, 2012 creditor Peter Gazzara ("Gazzara") filed both an objection to the Debtor's Plan (Doc. No. 16) (the "Objection") and a motion to dismiss the Debtor's case (Doc. No. 17) (the "Motion to Dismiss").  On March 28, 2013, the Court[1] held an evidentiary hearing on the matter of the

---

[1] Judge Deasy was originally assigned to the case at the time of the Motion to Dismiss, and thus held the hearing and issued the opinion thereon.

Motion to Dismiss (the "2013 Hearing"). The Court took evidence at the 2013 Hearing for the purpose of deciding whether Gazzara could show that the Debtor filed his chapter 13 case in bad faith under 11 U.S.C. (the "Bankruptcy Code") § 1307(c). However, the Court ruled that any evidence admitted at the 2013 Hearing could be used at any later hearing on confirmation of the Plan. Ultimately, the Court denied the Motion to Dismiss, for the reasons set forth in the Court's September 17, 2013 Opinion (the "Prior Opinion"). See Order, Doc. No. 78, and Prior Opinion, Doc. No. 79.

The remaining matter before the Court is confirmation of the Debtor's Plan (including Gazzara's Objection thereto). On March 6, 2014, the Court held an evidentiary hearing and took the matter under submission (the "2014 Hearing"). According to the parties' Joint Pre-Hearing Statement (Doc. No. 87): "Among the issues of law are whether the Debtor has proposed the plan in good faith, and among the issues of fact are the valuation of the Debtor's business as of the date of filing, the Debtor's income and other factual disputes as to whether the plan meets the criteria for confirmation."

This Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334, 157(a), and U.S. District Court for the District of New Hampshire Local Rule 77.4(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. FACTS

### A. Background

The Court's Prior Opinion provides background and context relevant to the present matter. Additionally, the Court's findings of fact and conclusions of law are relevant, at least in part, to the present matter and are thus incorporated herein by reference.

For the present purposes, the Court will restate the following background from the Prior Opinion.

Gazzara operated a pizza restaurant named "Capri Pizza" in Hudson, New Hampshire for approximately 23 years. In late 2010 or early 2011, he engaged Jon Coto ("Coto"), a business broker, to help him sell the business. On May 2, 2011, Gazzara sold the business to the Debtor for $129,000 (the "2011 Sale"). The 2011 Sale was partially seller-financed, with the Debtor making a cash payment of $30,000 and issuing two promissory notes to Gazzara for a total of $99,000. The parties apparently intended that the promissory notes would be secured by the business, but it appears Gazzara never perfected a valid security interest either in the assets of Capri Pizza or in its ownership LLC interests.

On April 26, 2012, the Debtor filed the present chapter 13 case. The Debtor listed "Capri Pizza of Hudson LLC" ("Capri Pizza") on his Schedule B with a value of $22,000. The Debtor attributed the value of that scheduled property interest to: "Inventory: $2,000.00; Equipment: $17,000.00; Checking Account: $3,000.00."

B.  The Debtor's Plan and Related Schedules

The Debtor's Plan proposes to pay $315.00 per month for 36 months, for a total of $11,340.00. The liquidation analysis included in the Plan states an estimated non-exempt asset value – in a hypothetical chapter 7 case – of $8,100.00. The liquidation analysis contained in the standard chapter 13 plan uses the fair market value of a debtor's assets as a starting point. It then subtracts any liens (against the relevant assets) and exemptions to arrive at the amount available for unsecured creditors in a hypothetical chapter 7 case. No party filed a timely objection to the Debtor's claimed exemptions in this case. Thus, the Court takes those exemptions at face value. Here, Capri Pizza is the only asset that is not fully exempt. The Debtor claims a total of

3

$13,900.00 in exemptions in Capri Pizza, pursuant to 11 U.S.C. § 522(d)(5) and (d)(6), leaving $8,100 in non-exempt value that would be available in a hypothetical chapter 7 case.

The Debtor's Schedule J, included with his voluntary petition (Doc. No. 1), states monthly net income of $275.71.  The Debtor's Official Form B22C (the "Means Test") indicates that the Debtor's income is below median, and the applicable plan commitment period is three years.

### C. Additional Evidence from the 2014 Hearing

At the 2014 Hearing, the Court heard additional testimony from the Debtor, Gazzara, and Coto, and heard testimony from the Debtor's expert, Laura S. O'Keefe, CPA ("O'Keefe"), and Gazzara's witnesses, Jennifer McDowell ("McDowell") and Michelle Harris ("Harris") (both former employees of Capri Pizza).  The parties stipulated that all proposed exhibits would be admitted, *in toto*, by agreement.

At the outset of the 2014 Hearing, the parties stipulated that Gazzara's claim is unsecured.  Indeed, on March 18, 2014, Gazzara filed an amended proof of claim, denominated as Claim 1-3 in the Court's Claims Register, which asserts a general unsecured claim of $93,226.00.  Accordingly, the Court clarified that the remaining objection to confirmation of the Plan falls primarily – or perhaps exclusively (see *infra*) – under § 1325(a)(4), "the best interest of creditors test."  The parties further stipulated that the test under § 1325(a)(4) is a hypothetical liquidation of the Debtor's assets on the effective date of the Plan.

#### 1. The Debtor's Expert and Expert Report

According to O'Keefe's testimony, she prepared a "Calculation of Value" of Capri Pizza as of December 1, 2013.[2]  See Ex. 106 (the "Calculation").  Her valuation of the business was

---

[2] The Court notes that this is neither the Petition Date nor the effective date of the Plan, whatever date that might be. Section 1325(a)(4) refers specifically to the "effective date of the plan" as the date for valuing property for the

4

based on the last two years of operations, and her analysis rested on the business's tax returns, records, asset valuations, and the Debtor's own records.  On cross examination, O'Keefe testified that she relied solely on the documents the Debtor and his accountant provided, including spreadsheets prepared by the Debtor or his accountant.  She did not review the Debtor's bank records, the documents underlying the Debtor's tax return, or records of actual expenses Capri Pizza incurred.

According to O'Keefe's testimony and the Calculation, based on the "capitalized earnings method," Capri Pizza had a value of $0.00 as of December 1, 2013.  In short, after making various adjustments to the Debtor's historical financial data,[3] Capri Pizza operated at a net loss for the entire period O'Keefe analyzed.  According to the Calculation, "the [Debtor's] business debt is not reflected in the expenses analyzed for the year 2012 and 2013 due to the bankruptcy proceedings.  Inclusion of interest expense would further decrease profitability, although even without interest, the business does not appear capable of generating a profit, or merely breaking even. This indicates that the company has no value as a going concern, and that the company's value lies in its Net Asset Value." Id., p. 2.  The document goes on to explain that "the only value of the business is the liquidation value, which would be determined by subtracting the fair market value of the company's assets from the fair market value of the company's [liabilities][4] at the valuation date."  Id., p. 3.

---

purposes of the best interest of creditors test.  Neither the Debtor nor Gazzara presented evidence or argument regarding the effective date of the Plan.
[3] The adjustments were downward adjustments to account for depreciation and owner compensation, items she asserted that the Debtor did not adjust for correctly.
[4] The document actually says "…subtracting the fair market value of the company's assets from the fair market value of the company's assets…," a clear mistake.

Having testified that Capri Pizza has no value as a going concern, and explaining that the only value in the business would be through liquidation, O'Keefe did not offer any testimony regarding the assets and liabilities of the business.

### 2. Gazzara's Expert and Expert Report

According to Coto's testimony, he prepared an "Expert's Written Report" regarding Capri Pizza's value. See Ex. 28 (the "Report"). The Report provides a valuation as of the Petition Date, as well as a valuation as of the end of November 2013 (based upon the prior twelve months of operations). Coto testified that he based the Report on the Debtor's bank statements. According to Coto's testimony and his Report, he uses the following methodology to value a pizza restaurant: He begins with the gross sales from the prior twelve months. From that figure he subtracts 9% for the New Hampshire meals tax. He then divides that net amount by 52 to determine the average weekly sales. Finally, he multiplies the average weekly sales by 20 to arrive at a "rule of thumb" value. It is Coto's opinion that this rule of thumb is the most accurate way to value a pizza restaurant, due in part to his experience that many owners report no net income, but still elect to continue to operate their businesses, and are able to support themselves and their families. It appears to be Coto's opinion that a pizza restaurant can report no net income, but still sell for a substantial price.

According to Coto's testimony and the Report, Capri Pizza had a minimum value of $78,000 on the Petition Date and $80,000 as of the end of November 2013. Coto describes those values as minimums because they are based only on the figures the Debtor reported, i.e., they do not include (potentially) unreported cash sales or other unreported sales or revenues. Coto suggests that businesses and business owners seldom, if ever, over-report their sales; if anything,

sales are underreported. According to the Report, "if the Debtor did not deposit all the sales, the [valuations] would increase" from the ones provided. On cross examination, Coto indicated that his rule of thumb approach did not compute or account for the value of Capri Pizza's assets. Additionally, by looking at the business's bank records, Coto would not be able to tell whether deposits were from actual sales or other sources, such as contributions from family members.

Under questioning by the Court, Coto testified that the typical marketing time for a pizza restaurant is approximately seven to eight months. He further testified that if he were advising on a quicker sale, he would discount the rule of thumb price by at least 10-20%, and that a 20% discount would be likely to produce a sale in three to five months. Based on Coto's $80,000 valuation of Capri Pizza, a 20% discount would suggest a selling price of $64,000 for an accelerated sale.

### 3. The Debtor's Testimony

The Debtor's additional testimony at the 2014 Hearing primarily concerned the pre- and post-petition operations of Capri Pizza (e.g., the hours the Debtor works, the business's competition) and the Debtor's personal circumstances (e.g., that the Debtor was going through a divorce). While this information might influence the value of Capri Pizza on the effective date of the Plan, it is not direct evidence of any specific value of the business.

Among the Debtor's relevant testimony was the fact that he originally (i.e., on his schedules and in his Plan) valued Capri Pizza at $22,000, which was based on the replacement value of the business's assets. That value involved no expert consultation and effectively reflected the Debtor's personal opinion.[5] It is the Debtor's opinion that he could not sell Capri Pizza for $78,000. On cross examination, the Debtor testified that he would not sell the business

---

[5] At the 2013 hearing, the Debtor's expert, Arthur Drewes, provided undisputed testimony, along with an appraisal that the "turnkey" value of Capri Pizza's equipment was $12,000 to $15,000 as of July 16, 2012.

7

if someone offered him $80,000.  However, the Debtor quickly equivocated that this was because he had put so much energy into the business, and not because he thinks it is actually worth much more than $22,000.  None of the Debtor's additional testimony elaborated on the value of the business's assets or the existence or amount of the business's liabilities.  The Debtor did not testify about whether Capri Pizza is the lessee on its building (as opposed to the Debtor or another party) and whether the lease might have value to a potential purchaser. [6]  Similarly, the Debtor did not testify about whether Capri Pizza has any recipes or customer lists that could have value to a potential purchaser.

On cross examination, the Debtor testified that he uses a Capri Pizza credit card for numerous personal expenses and regularly takes money out of the cash register and puts it in his pocket.

### 4. Gazzara's Testimony

Gazzara's additional testimony at the 2014 Hearing was similar to the Debtor's additional testimony.  Gazzara primarily testified regarding the operations of Capri Pizza prior to its sale to the Debtor.  His testimony concerned factors that might affect the value of the business for better or worse.  The only testimony he provided regarding a value for Capri Pizza was his statement that if he bought the business now, he would pay $80,000 and make an effort to build it back up.  Gazzara testified that he thought a price of $80,000 would be a "bargain."  The Court notes the self-serving nature of that statement, and the fact that no evidence was introduced that Gazzara offered the Debtor $80,000 to re-purchase the business.  Like the Debtor, Gazzara did not provide any testimony about the assets or liabilities of Capri Pizza.

---

[6] The Debtor's Schedule G lists the lease for Capri Pizza's premises, but it is unclear if the Debtor or the LLC is the lessee.

5. Gazzara's Additional Witnesses

McDowell and Harris provided no direct evidence of the value of Capri Pizza on the effective date of the plan. Their testimony primarily concerned the Debtor's business practices. The testimony indicated that neither McDowell nor Harris had ever deposited cash sales for the Debtor, and their testimony was unable to speak to any specific ratio of sales to deposits. McDowell stopped working at Capri Pizza in May of 2012, the month after the Petition Date. Both testified that the Debtor consistently paid them in cash, as opposed to a paycheck, and that the Debtor frequently paid other employees and vendors in cash or combinations of cash and checks.

D. **The Parties' Positions**

Gazzara stated three bases on which he opposes confirmation of the Plan in his Objection: 1) that the Debtor did not propose the plan in good faith pursuant to § 1325(a)(3) because he undervalued Capri Pizza on his schedules with the intent to thwart Gazzara; 2) that the Plan fails to meet the best interest of creditors test pursuant to § 1325(a)(4) because the Debtor undervalued Capri Pizza[7]; and 3) that the Plan violates § 1325(a)(5) by failing to properly treat Gazzara as a secured creditor under that subsection. The Court need not address Gazzara's final basis, because Gazzara no longer claims to be a secured creditor in this case.

The Debtor maintains that he filed his petition and Plan in good faith, and based upon the fact that Capri Pizza's assets are worth less $22,000, he is providing a greater dividend than § 1325(a)(4) requires. Accordingly, the Debtor argues that his Plan should be confirmed as filed.

---

[7] The Objection explicitly argues that the "Debtor's valuation of… Capri Pizza is so far below its real value, that set by the Debtor in an arms length transaction less than a year before the filing, it is *ipso facto bad faith*." The Objection further argues that Gazzara is the sole creditor in this case, and the Plan is designed to give him only a nominal payment. Given the travel of this case, and the evidence taken at the 2013 Hearing, it is clear that Gazzara is not the sole creditor in this case, and there is a bona fide dispute over the value of Capri Pizza.

### III.  DISCUSSION

####   A.    Section 1325(a)(3) and the Debtor's Good Faith in Filing his Plan

The Court will not belabor its analysis of § 1325(a)(3) and the issue of whether the Debtor filed his Plan in good faith.  This is for two reasons. First, Gazzara's objection pursuant to § 1325(a)(3) has been largely eclipsed by the evidence outlined in the Prior Opinion. Specifically, that Gazzara is not the Debtor's only creditor, and the Debtor's bankruptcy is thus not a two-party dispute. Gazzara presented virtually no evidence at the 2013 Hearing or the 2014 Hearing on the specific issue of whether the Debtor filed his plan in good faith.  Instead, the "good faith" evidence focused on the value of Capri Pizza.  With that in mind, Gazzara's objection under § 1325(a)(3) centers largely on the Debtor's valuation of Capri Pizza, an issue that is in bona fide dispute.

Second, the role of objections to confirmation pursuant to § 1325(a)(3) has become less clear after BAPCPA.  See, Keith M. Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY, 4TH EDITION, § 496.2, Sec. Rev. Apr. 21, 2010, www.Ch13online.com (hereafter "Lundin") ("as the Code has been amended to provide more and more detail to the economic tests for confirmation elsewhere in § 1325, the debate has raged with respect to what the good-faith test adds to the effort that must be made by Chapter 13 debtors to pay unsecured creditors"). In the First Circuit, case law addressing such objections tends to deal with circumstances not present here.  See, e.g., In re Cobb, 485 B.R. 264, 268 (Bankr. D.R.I. 2013) (overruling chapter 13 trustee's § 1325(a)(3) objection to an above-median debtor's plan that paid less than 100% of disposable income over five years, but nonetheless paid 100% of allowed claims); In re Waechter, 439 B.R. 253, 257 (Bankr. D. Mass. 2010) (sustaining chapter 13 trustee's § 1325(a)(3) objection to a debtor's plan in which the debtor proposed to pay a disproportionate

10

amount of her and her husband's shared household expenses, at the expense of her creditors); In re Klaven, 2012 Bankr. LEXIS 3286 (Bankr. D. Mass. July 18, 2012) (denying confirmation of a debtor's plan pursuant to § 1325(a)(3) where the debtors proposed to pay nothing to unsecured creditors while retaining a vacation home at the cost of at least $314 per month, net of any rental income they might receive).

In light of the above, the Court finds that Gazzara's remaining objection to the Debtor's Plan lies squarely within § 1325(a)(4), because it is essentially a dispute over the value of Capri Pizza and whether the Plan satisfies the best interest of creditors test.

### B. Section 1325(a)(4) and the Best Interest of Creditors

Section 1325(a)(4) provides that a court shall confirm a chapter 13 plan if "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date." Stated in the inverse, "a plan cannot be confirmed under section 1325(a)(4) of the Code if the holders of allowed unsecured claims receive less than they would receive upon liquidation in a chapter 7 case." In re Battista, 180 B.R. 355, 357 (Bankr. D.N.H. 1995).

In this Court's view, neither party presented sufficiently authoritative or relevant evidence at the 2013 Hearing to prove a value for Capri Pizza on the Petition Date or the effective date of the Plan, and the Prior Opinion supports that view. Accordingly, the Court must determine whether the Debtor or Gazzara presented sufficient additional evidence at the 2014 Hearing to support their respective valuations of Capri Pizza. See In re Daher, 2008 Bankr. LEXIS 2544 at *7 (Bankr. D. Mass. Aug. 20, 2008) (finding that the debtor's "on-line appraisal"

11

was no more reliable than the objecting creditor's use of data from the town assessor's office and ordering an evidentiary hearing on the issue of value).

### 1. The Burden of Proof Under § 1325(a)(4)

Before examining the evidence the parties presented, the Court must determine which party bears the burden of proof. In the Prior Opinion, the Court noted that "[u]nder § 1307(c), the objecting creditor has the burden of proving a lack of good faith on the part of the debtor." Prior Opinion, p. 6. Under § 1325(a)(3), the *debtor* has the burden of proving good faith. Sullivan v. Solimini (In re Sullivan), 326 B.R. 204, 211 (1st Cir. B.A.P. 2005) (emphasis added). With that in mind, one might reasonably conclude that the debtor has the burden of proving *all* of § 1325's confirmation requirements, including the best interest of creditors test under §1325(a)(4). However, there does not appear to be a clear consensus on this issue, as one authority explains:

> The reported decisions are unnecessarily divided on the burdens of proof at confirmation of a Chapter 13 plan. A strong majority of courts appropriately allocate to the debtor the burden of proving the conditions for confirmation in §§ 1322 and 1325(a). A few reported decisions conclude that a creditor objecting to confirmation has the burden to prove the failure of a condition for confirmation.
>
> The most common formulation of the burden of proof with respect to the disposable income test for confirmation in § 1325(b) is that the objecting party bears the initial burden of going forward with evidence in support of the objection, but *the ultimate burden of persuasion rests with the debtor to prove all the conditions for confirmation*.

Lundin, § 217.1, at ¶¶,1-2, Sec. Rev. June 7, 2004 (emphasis added, footnotes omitted); *accord*, In re Woodman, 287 B.R. 589, 593 (Bankr. D. Me. 2003). The First Circuit Bankruptcy Appellate Panel has taken the view that, in the context of proving feasibility pursuant to §1325(a)(6), the debtor "carries the initial burden." First Nat'l Bank v. Fantasia (In re Fantasia), 211 B.R. 420, 423 (1st Cir. B.A.P. 1997).

12

Here, Gazzara has presented at least some evidence that the Debtor has undervalued Capri Pizza.[8] Accordingly, the Court need not decide whether the Debtor bears the burden of proof of some or all of the conditions for confirmation, because the Debtor now unequivocally bears the burden of proving his own valuation of Capri Pizza.

While case law on facts analogous to this matter is sparse, the case of In re Bledsoe, 2004 Bankr. LEXIS 2486 (Bankr. D. Idaho April 6, 2004), is informative. In Bledsoe, a creditor objected to the debtors' plan pursuant to § 1325(a)(4) on the grounds that the debtors undervalued their interest in a corporation they owned (a check-cashing business). Id. at *1. Pre-petition, one of the debtors had been involved in a somewhat complicated business transaction that involved an exchange of business interests and cash. See id. at *3. In that transaction, the debtor exchanged his partial interest in one corporation with one of that corporation's other owners for the remaining interest in an unrelated second corporation[9] and $72,000 in cash. Id. The objecting creditor argued that the transaction set certain calculable values for the two corporations, and based on those values, the debtor's 100% interest in the corporation he owned had a value of $112,000 at the time of the transaction. Id. at *6. However, the debtors valued their interest in the corporation at $13,000. Id. at *5. To arrive at that value, the debtors "added the amount of cash on hand and in the company's bank account to the [amount of the] uncashed checks held at the store. They then deducted from that total the [amount of the] bad checks [the debtor] had been unable to collect. Through this process, [the debtors] arrived at a value of $ 13,000." Id.

The court in Bledsoe found both the debtors' and the creditor's analyses of value problematic. See id. at *9-11. Regarding the creditor's value, the court found that it assumed

---

[8] Although Gazzara may not have presented enough evidence to prove the specific valuation Gazzara promotes.
[9] The corporation the debtor owned 100% of on the petition date.

without support that the debtors' interest in the corporation could be sold as a going concern. See id. at *9-10. Further, the creditor's valuation depended on a value determined before the petition date (i.e., not the effective date of the plan), and in a transaction between insiders who were at odds with each other (i.e., not necessarily a transaction that would reflect fair market value). Id. at *9-10. Regarding the debtors' value, the court found that it reflected value as of the petition date and not the effective date of the debtor's plan. Id. at *12. Moreover, the debtors' calculation subtracted the value of bad checks from the value of good checks, when in fact the bad checks were simply worthless and should not have factored into the valuation at all. See id. Finally, the court noted that "the parties presented no evidence concerning the hard asset value of the business at [confirmation]." Id.

      The situation in the present matter is similar to Bledsoe. Gazzara initially objected to the Debtor's valuation of Capri Pizza on the basis that it was too low in light of the parties' arms-length transaction in the year preceding the Petition Date. That is effectively an argument, not evidence. At the 2014 Hearing, Coto provided evidence of how he would value a pizza restaurant for marketing and sale purposes, and applied his methodology to Capri Pizza's recent performance, based upon the business's records and bank statements. While Coto assigned a going-concern value of approximately $80,000 to Capri Pizza (based upon a marketing period of seven to eight months), he did not provide testimony regarding any actual market for cash-burning restaurants like Capri Pizza. In response to the Court's questions, Coto's testimony indicated that an accelerated sale of Capri Pizza – as a going concern – might fetch something in the range of $64,000.

      O'Keefe's testimony indicated that based on her analysis, Capri Pizza has no value as a going concern, and the business's value lies in its net asset value. However, O'Keefe provided

no testimony as to what the net asset value might be. The Debtor, for his part, presented evidence at the 2013 Hearing that the value of the business's equipment was $12,000 to $15,000, as of July 16, 2012 (i.e., not the effective date of the Plan). The Debtor presented no evidence regarding what other assets the business might have – if any – such as customer lists, food recipes, or property leases, and what value those assets might have. The Debtor presented no evidence regarding the business's liabilities, such as unpaid payroll, accounts payable, or unpaid rent.

Thus, the Court does not have a complete picture of the value of Capri Pizza's assets and liabilities on the effective date of the Plan. The business may very well have liabilities that exceed its assets, and thus has no liquidation value. Or, the business may have no liabilities at all, as the Debtor's valuation suggests. However, the Debtor's position is that a select group of the business's assets has a value lower than the value the Debtor ascribed to the entire business in his liquidation analysis, and thus his Plan must satisfy the best interest of creditors test. To this Court, that looks more like an argument than specific evidence of a value of Capri Pizza. In any event, the Debtor has not presented sufficient evidence for the Court to find that his value is reasonably accurate in the face of Gazzara's Objection and expert testimony, and thus the Court cannot find that the Plan meets the best interest of creditors test under § 1325(a)(4).

## IV.  CONCLUSION

For the foregoing reasons, confirmation of the Debtor's Plan is DENIED.

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order,

consistent with this opinion, that denies confirmation of the Debtor's Plan and provides a deadline for the Debtor to file an amended plan, should the Debtor choose to do so.

ENTERED at Manchester, New Hampshire.


Date:   August 20, 2014                         /s/ Bruce A. Harwood
                                                Bruce A. Harwood
                                                Chief Bankruptcy Judge

16